<u>NOT FOR PUBLICATION</u>                                    (Docket No. 10)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                    :
FRED JACQUES,                       :
                                    :
            Plaintiff,              :   Civil No. 04-1688 (RBK)
                                    :
    v.                              :   **OPINION**
                                    :
BERLIN BOROUGH BOARD OF             :
EDUCATION,                          :
                                    :
            Defendant.              :
_____:

**KUGLER**, United States District Judge:

   This matter comes before the court on motion by Defendant Berlin Borough Board of Education ("Defendant" or the "Board") for summary judgment of Plaintiff Fred Jacques' ("Jacques") claim that Defendant discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Jacques alleges that the Board failed to provide reasonable accommodations as required by the ADA. Defendant now argues that because Jacques was not a "qualified person with a disability," any failure to provide accommodations did not violate the ADA. Because a material question of fact remains as to whether Jacques is a qualified person with a disability, Defendant's motion will be denied.

**I.   Background**

Jacques taught Industrial Arts classes for the Board from 1986 until his retirement in 2002. Throughout his teaching career, Jacques was completely blind in right eye due to a childhood BB gun accident. Jacques' monocular blindness caused him minimal impairment until approximately 1998 when he was diagnosed with glaucoma in his other eye. Although Jacques received treatment for the glaucoma, the disease diminished his visual acuity and exacerbated the challenges arising from his monocular vision.

In response to this increased impairment, Jacques requested accommodations in a letter to the principal Kathie Conaway ("Conaway") in June of 1999. Jacques allegedly received no reply and made a second request in March of 2001, again receiving no response. On February 19 and February 28, 2002, Jacques met with the Board's Interim Superintendent, Thomas Smith ("Smith"), about his request for accommodations, and Jacques submitted a letter to the Board on March 14, specifying the accommodations he believed he required. Specifically, Jacques requested an aide in certain classes and the elimination of a homeroom period to reduce paperwork. Jacques claims that he was never offered accommodations, in spite of these requests.

In April 2002, Jacques met with Smith and Conaway. Jacques alleges that Smith told him that he could not teach and

encouraged him to pursue disability retirement. Similarly, Conaway recommended a psychiatric disability retirement. Smith also told Jacques that he would have to obtain a certification in order to continue teaching. However, Jacques asserts that the certification was not required by the New Jersey State Department of Education.

On April 23, 2002, Jacques filed for disability retirement. On his application for disability, Jacques stated that "complications as a result of eye problems . . . make it impossible for me to carry out my job." (Jacques Aff. Exhibit E). Jacques submitted medical examination forms from two doctors in support of his application for disability retirement, supplementing his claim that he was unable to work. On or about May 3, 2002, Dr. Arnold Goldman sent a letter to Smith urging the Board to provide Jacques with his requested accommodations. A few days later, on or about May 9, 2002, Jacques sent a letter to Smith informing him that he was applying for disability retirement. Jacques' application was granted, and he officially resigned in a letter dated June 19.

**II.  Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

3

330 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331. If the moving party has not fully discharged its initial burden, its motion for summary judgment must be denied. Id. at 332. If the moving party satisfies its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. Discussion

The ADA requires employers to provide reasonable accommodations to qualified individuals with disabilities. 42 U.S.C.A. § 12112 (b)(5)(A).[1] A qualified person is "an individual

---

[1] For the purposes of the ADA, "the term 'discriminate' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." Id.

with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).

Defendant contends that Jacques could not perform the essential functions of his position as a teacher, and therefore was not qualified under the ADA. Defendant presents no evidence indicating that Jacques would have been unable to perform his job functions, aside from the statements made by Jacques and his doctors in Jacques' application for disability retirement that his "eye problems" made it "impossible" for him to carry out his job. Because the New Jersey Division of Pensions and Benefits determined that Jacques was indeed unable to work and granted Jacques' disability retirement application on the basis of these statements, Defendant argues, Jacques should not now be able to maintain that he actually was able to perform his job duties.

On its face, a plaintiff's eligibility for disability benefits appears mutuality exclusive with the ability to bring an ADA claim. An individual cannot receive disability retirement unless he convinces the responsible agency that he has a disability so severe that he is "physically or mentally incapacitated for the performance of duty and should be retired." N.J.S.A. 18A:66-39(b). On the other hand, a plaintiff cannot successfully bring a claim under the ADA unless he can demonstrate that he is capable of performing the essential

functions of his job, at least with reasonable accommodations.

However, in Cleveland v. Policy Management Systems, Corp., 526 U.S. 795 (1999), the United States Supreme Court held that Social Security Disability Insurance ("SSDI") and ADA claims do "not inherently conflict to the point where courts should apply a special negative presumption." Id. at 802. Under Cleveland, a plaintiff's claim that he is "totally disabled" for the purposes of obtaining disability benefits does not automatically preclude him from also claiming to be a "qualified individual" under the ADA, even if the agency granted the request for benefits. Id. at 798; Detz v. Greiner Industries, Inc., 346 F.3d 109, 115-17 (3d Cir. 2003). Nor does such a claim establish "a strong presumption against the recipient's success under the ADA." Id. at 797-98.

In distinguishing the test for SSDI eligibility from the ADA standard, the Cleveland Court observed that "[w]hen the [Social Security Agency ("SSA")] determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account." Id. at 803.[2] Consequently, a request for accommodations under the ADA does not

---

[2] Defendant concedes that "[l]ike the SSDI program in Cleveland . . . the Teachers' Disability Retirement statute does not mention whether the applicant has to be able to perform the essential functions of a teacher with or without accommodations." (Def.'s Br. Summ. J. 13, No. 04-1688, filed May 4, 2005). For the purposes of analysis of the present motion, therefore, the Cleveland Court's analysis of the SSDI statute applies equally to the New Jersey statute authorizing disability retirement.

inherently conflict with an application for SSDI because "the ADA considers whether a person might be able to perform her job 'with reasonable accommodation,' while that possibility is ignored when determining disability for SSDI purposes." Detz, 346 F.3d at 117 (citing Cleveland, 526 U.S. at 802). A claim of inability to work made in the context of an application for disability benefits, therefore, does not necessarily estop a claim of ability to work in the context of the ADA. The meaning of "inability to work" are different in the two contexts.

Nevertheless, "a plaintiff 'cannot simply ignore' her previous statements to the SSA" and "must explain why that SSDI contention is consistent with' her subsequent assertion in connection with her ADA claim." Detz, 346 F.3d at 116 (quoting Cleveland, 526 U.S. at 798). The plaintiff bears the burden of demonstrating the consistency of the two assertions and cannot simply contradict his previous statement. Detz, 346 F.3d at 116 (quoting Cleveland, 526 U.S. at 806).

To satisfy this burden at the summary judgment level, the plaintiff's explanation must be adequate to enable a reasonable juror to find that the plaintiff could perform his job with reasonable accommodations, in spite of the truth of the statement on his application for benefits. Cleveland, 526 U.S. at 807; Detz, 346 F.3d at 118 ("[T]he plaintiff must proceed from the premise that his previous assertion of an inability to work was

true, or that he in good faith believed it to be true, and he must demonstrate that the assertion was nonetheless consistent with his ability to perform the essential functions of his job.").

While Jacques acknowledges the truth of the statement on his disability retirement application that it was "impossible" for him to carry out his job, he also claims that "[a]t all relevant times, I was able to perform the duties of teacher with the Board *with reasonable accommodations* such as with the provision of an aide and reduced number of classes." (Jacques Aff. ¶ 27) (emphasis added). He explains the discrepancy between his retirement application and his ADA allegations on the basis that the "statement on my disability application did not take into account my ability to perform my job duties with reasonable accommodations such as the provision of an aide for certain classes." (Jacques Aff. ¶ 19). Jacques provided evidence in the form of an affidavit that his statement in his application for disability retirement was based on the fact that "the Board had previously ignored my requests and not provided accommodations." (Jacques Aff. ¶ 19). Consequently, Jacques argues, his two statements were consistent because he could perform his job with reasonable accommodation, but could not perform his duties without such accommodations.

Jacques' explanation is consistent with the Cleveland

8

Court's determination of the kind of explanation that would resolve an apparent conflict between an application for disability benefits and a claim of failure to accommodate under the ADA. Cleveland, 526 U.S. at 806 ("[A]n ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it.") (emphasis in original). Accordingly, for the purposes of defeating a motion for summary judgment, Jacques sufficiently accounts for the discrepancy between his request for disability retirement and his ADA claim.

Defendant argues that Jacques' explanation is inadequate because his previous statements on his retirement application make it clear that he could not perform the essential functions of his teaching position, even with accommodations. Defendant contends that Jacques stated specifically in his application that his impaired vision prevents him from supervising students or doing paperwork, both of which are essential functions of Jacques' teaching job. Consequently, Defendant argues, Jacques' case is more analogous to Motley v. New Jersey State Police, 196 F.3d 160 (3d Cir. 1999), than Cleveland.

In Motley, the Third Circuit held that a former state trooper was not a "qualified individual with a disability" because "Motley offered detailed descriptions of his injuries and

9

their impact on his ability to work." Motley, 196 F.3d at 166. These descriptions constituted factual assertions of Motley's limitations that were unaffected by the difference in statutory schemes. Specifically, in his application for disability, Motley claimed: "painful and recurring headaches," "intense back pain," inability to sit more than twenty minutes or sleep more than two or three hours, and "'extreme pain' in his left knee" that rendered him unable to stand without pain. Id. at 167. Motley provided no explanation of how he could perform the essential functions of a state police officer with these particular injuries.

Unlike Motley, Jacques has provided evidence suggesting that an aide in certain classes and exemption from a homeroom period would adequately enable him to perform his job. Defendant argues that because supervising a class and doing paperwork are essential functions of teaching, this Court should hold as a matter of law that Jacques cannot be qualified to teach with his visual impairment. However, such a conclusion would amount to an unlawful " irrebuttable presumption that [] blindness made [a teacher] incompetent to teach sighted students." Gurmankin v. Costanzo, 556 F.2d 184, 187 (3d Cir. 1977). Furthermore, Jacques provided evidence, including his own statements and those in letter from Dr. Arnold Goldman, written in May 2002, suggesting that Jacques could perform his tasks if accommodated. (Jacques

10

Aff. ¶ 21, 27, Exhibit H). Jacques has therefore provided adequate evidence to enable a reasonable jury to find that he was at all times able to perform the essential functions of his job, in spite of his statement on his application for disability retirement.

Accordingly, Defendant has failed to demonstrate that no reasonable jury could find that Jacques was a qualified person with a disability, and summary judgment must be denied.

The accompanying Order shall issue today.


Dated:   10-17-05            S/ Robert B. Kugler
                             ROBERT B. KUGLER
                             United States District Judge